```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
RAYMOND MICHAEL, JR.,

                    Plaintiff,           MEMORANDUM & ORDER
                                         09-CV-5200(JS)(AKT)
        -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, LAWRENCE W. MULVEY,
JOSEPH MILLER, JOHN BAILEY,
MICHAEL NICOLLETTI, "GREG" NICHOLSON,
AND JAMES M. PANARELLO,

                    Defendants.
----------------------------------------x
APPEARANCES:
For Plaintiffs:     Robert A. Scher, Esq.
                    Scher & Scher, P.C.
                    55 Water Mill Lane, Suite 500
                    P.O. Box 376
                    Great Neck, New York 11021

For Defendants:     John Ciampoli, Esq.
                    Nassau County Attorney Designee
                    One West Street
                    Mineola, New York 11501
```

SEYBERT, District Judge,

On November 30, 2009, Plaintiff Raymond Michael Jr. filed a Complaint against Defendants, County of Nassau, Nassau County Police Department ("NCPD"), Lawrence W. Mulvey, Joseph Miller, John Bailey, Michael Nicolletti, "Greg" Nicholson, James M. Panarello, and John Doe 1 through and including John Doe 5. In addition to various common-law torts, Plaintiff asserts claims under 42 U.S.C § 1983. Defendants have moved to dismiss.

For the following reasons, this motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

On September 4, 2008, Plaintiff alleges he was driving his motor vehicle on Franklin Avenue in Nassau County when Defendant Police Officers Joseph Miller ("Miller") and John Bailey ("Bailey") stopped him. (Compl. ¶ 28.) Plaintiff alleges that Officers Miller and Bailey approached him and asked for his driver's license, insurance card and registration. Plaintiff alleges that, when he produced these, Officers Miller and Bailey directed him to exit his car. Plaintiff alleges that Officers Miller and Bailey then arrested him for a robbery committed in Elmont. (Id. ¶ 30-31.)

Plaintiff claims he was with a friend that day and did not consume any alcohol. Plaintiff further claims that Officers Miller and Bailey did not administer any sobriety tests at the scene, such as a breathalyzer test. (Id. ¶ 34.) Nor, according to Plaintiff, did anyone ask him to take a breathalyzer test when he later arrived at police headquarters. (Id. ¶ 48.)

Plaintiff alleges that Officers Miller and Bailey then handcuffed him, read him his Miranda warnings, and transported him to NCPD Headquarters. (Id. ¶¶ 35, 37-38.) In response, Plaintiff claims that he asked for an attorney, but otherwise exercised his right to remain silent. (Id. ¶ 39.) Plaintiff

claims that Officers Miller and Bailey "merely laughed" when he requested an attorney. (Id. ¶ 40).

Plaintiff claims that the handcuffs caused loss of circulation, stress upon the nerves, and "great pain." (Id. ¶ 42.) Plaintiff alleges that he complained to Officers Miller and Bailey, and asked them to remove or loosen the handcuffs. (Id. ¶ 43.) According to Plaintiff, Officers Miller and Bailey refused, and "continuously laugh[ed] at plaintiff's complaints of pain." (Id. ¶ 44.) Plaintiff claims that, by the time he arrived at police headquarters, he had lost sensation in his arms, wrists, and hands, and "was extremely upset and disturbed." (Id. ¶ 47.) Plaintiff further claims that Officers Miller and Bailey kept him in handcuffs for more than two hours after arriving at police headquarters, despite his pleas to remove them, his requests to be taken to a hospital, and no danger of his escape. (Id. ¶ 49.)

Plaintiff alleges that, once he arrived at police headquarters, he again asked to call his attorney. (Id. ¶ 52.) Plaintiff claims that the officers again responded with "laughter and derogatory comments." (Id. at ¶ 53.) Plaintiff claims that, despite invoking his right to counsel, the officers continued to question him about the Elmont robbery. (Id. ¶ 54). Plaintiff contends that he continued to deny knowledge of any involvement. (Id.)

Plaintiff alleges that Defendant Police Officer "Greg" Nicholson, ("Nicholson") then accused Plaintiff of driving unsafely, driving while intoxicated, making a turn without signaling, and resisting arrest. (Id. ¶ 55.) Plaintiff alleges that Officer Nicholson then requested he take a breathalyzer test, and falsely claimed that Plaintiff had previously refused such a test. (Id. ¶¶ 56-57.) Plaintiff claims that Officer Nicholson "conjured up" these allegations to justify his arrest, which "was without any cause whatsoever." (Id. ¶ 58.) Plaintiff further claims that Officer Bailey then filed false police and court documents indicating that Plaintiff was intoxicated and engaged in traffic violations. (Id. ¶ 59-60.)

Plaintiff alleges that, 2.5 hours after being placed in custody, Officer Nicholson finally removed his handcuffs and permitted him to call his attorney. (Id. ¶ 63.) Plaintiff claims that, when calling counsel, he "could not hold the phone due to the lack of sensation in his hands," and that Officer Bailey "howled with laughter" at this predicament. (Id. ¶ 65.) Plaintiff alleges that his attorney did not answer the phone, so he left a message on his machine. (Id. ¶ 66.)

After leaving this phone message, Plaintiff alleges that Officer Nicholson proceeded to ask him questions about him driving while intoxicated. (Id. ¶ 67.) This questioning was allegedly videotaped. (Id. ¶ 68.) But, according to Plaintiff,

4

at one point the officers interrupted the video recording, then Officers Nicholson, Nicoletti, Miller, Bailey and "at least one" John Doe proceeded to beat and kick him. (Id. ¶¶ 69-72, 75.) This alleged attack included the officers "placing fingers up to and into Plaintiff's nostrils," "grabbing his penis," and "forcibly banging and beating his head onto the ground multiple times." (Id. ¶ 75.) This alleged beating "caused Plaintiff to urinate in his pants, caused his entire body to go numb, and caused plaintiff great terror and shock." (Id. ¶ 76.) Plaintiff claims that, despite a 2 minute, 6 second gap in the video recording, the recording's prior operation captured "some of the sounds of the beating of plaintiff." (Id. ¶¶ 73-74.) Plaintiff alleges that, after the beating, the officers forced him to remain in a room and did not offer or provide medical treatment. (Id. ¶ 78.) The officers then locked Plaintiff in a cell overnight, again without providing him any medical treatment. (Id. ¶ 81.) After arraignment, Plaintiff claims that he spent seven days in jail "in the company of criminals, addicts and other unsavory persons." (Id. ¶ 86.) Eventually, Plaintiff claims the police released him from custody when the "prosecution failed to appear and present a case before the Grand Jury within the statutory time required." (Id. ¶ 88.)

Plaintiff claims injuries from the alleged beating that include cuts, bruises, mental and physical stress, chronic

5

headaches, chronic back and neck pain, numbness, loss of sensation in his hands, torn rotator cuff, insomnia, scarred penis, as well as other injuries. (Id. ¶ 89.) Plaintiff claims that, due to these injuries, he has become disabled and is unable to work. (Id. ¶ 92.) Plaintiff claims to have suffered loss of income, financial hardship, public disgrace and humiliation with his companion, friends, and community. (Id. ¶ 93.)

DISCUSSION

I. Standard under Rule 12(b)(6)

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Ashcroft). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

II. Defendant's Rule 8(a) Argument

Defendants argue that Plaintiff's Complaint violates F̃ED. R. C̃IV. P. 8(a) because, rather than provide a "short and plain" statement of his claim, Plaintiff instead includes detailed factual allegations. This argument is absurd. Rule 8(a) sets forth the minimum standard a Plaintiff must meet. There is no requirement that a Plaintiff exclude relevant factual allegations simply to make his Complaint "shorter" or "plainer." Here, Plaintiff's Complaint is not "confused, ambiguous, vague, or otherwise unintelligible." Salahuddin v. Cuomo, 861 F. 2d 40, 42 (2d Cir. 1988). Nor, for the most part, are Plaintiff's allegations redundant. See, generally, F̃ED. R. C̃IV. P. 12(f). It follows then that Plaintiff's Complaint should not be dismissed simply because Plaintiff has gone through the admirable task of clearly setting forth, in detail, the facts underlying his claims.

III. Plaintiff's First and Second Causes of Action

Aside from their misguided Rule 8(a) argument, Defendants do not seek to dismiss Plaintiff's First and Second Causes of Action (alleging § 1983 violations) in their entirety. Instead, they seek dismissal as to particular Defendants. The Court addresses these arguments as to each Defendant.

A. Claims Against NCPD

Defendants argue that Plaintiff's claims against NCPD fail because NCPD is not an entity subject to suit, but only an arm of Nassau County. Plaintiff concedes this fact. (Pl. Opp. Br. at 1.) Accordingly, the claims against NCPD are DISMISSED.

B. Plaintiff's Claims Against Lawrence W. Mulvey

Defendants argue that the claims against Lawrence W. Mulvey, NCPD Police Commissioner, must be dismissed because Plaintiff has not alleged facts that could plausibly show Commissioner Mulvey's personal involvement in the alleged conduct. The Court agrees.

Under § 1983, a defendant faces no liability absent "personal involvement" in the alleged deprivation of constitutional rights. See Wright v. Smith, 21 F.3d 496 501 (2d Cir. 1994). To plead "personal involvement," a plaintiff must allege facts showing: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 127 (2d Cir. 2004).

Here, the Complaint pleads no facts at all concerning Commissioner Mulvey, other than his title and basic biographical information unconnected to the alleged conduct. (Compl. ¶ 9.) Accordingly, it pleads no basis to hold him personally liable under any applicable theory.[1] And, consequently, the claims against him must be DISMISSED.

C. Plaintiff's Claims Against Nassau County

Defendants further contend that Plaintiff has not sufficiently pled a Monell claim for municipal liability. See Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Court disagrees.

Plaintiff's Complaint does not identify any official Nassau County policy or custom that resulted in the alleged constitutional violations. Nor does Plaintiff's Complaint identify a policymaker who promulgated such a policy or custom

---

[1] In his opposition papers, Plaintiff apparently tries to pin liability on Commissioner Mulvey under a respondeat superior theory. (Pl. Opp. Br. at 9) ("He is responsible for the wrongs perpetrated by his underlings."). But respondeat superior is not a basis for § 1983 liability. See Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003).

through his acts. But, at least at this stage, the law does not require him to do so. See, generally, Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) ("[t]o show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation"). Rather, "[i]t is sufficient to show, for example, that a [constitutional violation by] municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." Id. (internal citations and quotations omitted). In addition, "[a] policy, custom, or practice may also be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Id. (internal citations and quotations omitted). And, because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage," a plaintiff "need only plead that the city's failure to train caused the constitutional violation." Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004); Williams v. City of New York, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010) (continuing to apply Amnesty America's lenient pleading standard, post-Iqbal and Twombly).[2]

---

[2] On the surface, it might be argued that Amnesty America conflicts with the Iqbal and Twombly standard, by permitting a

Here, the Complaint pleads sufficient facts to infer that Nassau County had: (1) an informal policy, or a custom, of at least tolerating police misconduct; and/or (2) failed to properly train its officers, thereby expressing deliberate indifference to the potential for violations. The conduct alleged in the Complaint took place over several hours. At least five officers allegedly participated in repeated denials of Plaintiff's rights, including his right to be free from arrest without probable cause, his right to counsel, and his right to be free from excessive force. Some of the officers allegedly mocked Plaintiff during the ordeal, including for invoking his right to counsel. (Compl ¶¶ 40, 53, 65, 79.) Much of the alleged conduct took place at police headquarters. (Compl. ¶¶ 45-82.) This includes an alleged beating Plaintiff suffered in a public hallway at headquarters. (Compl. ¶ 70.) And it also includes an incident where officers allegedly interrupted a video recording of Plaintiff's interrogation so

---

plaintiff to assert a Monell "failure to train" claim without amplifying the complaint with enough facts to render the claim "plausible." But such an argument sees the forest while ignoring the trees. The Supreme Court has instructed that assessing a complaint's plausibility "is context-specific, requiring the reviewing court to draw on its experience and common sense." Iqbal, 129 S. Ct. at 1940. Though pre-Iqbal, the Second Circuit, drawing upon its experience and common sense, has recognized that plaintiffs should be afforded a lenient pleading standard on failure to train claims, because they have no realistic way to learn about a municipality's training programs without discovery. Amnesty America, 361 F.3d at 130 n. 10.

they could beat him. (Compl. ¶¶ 72-77.) Thus, Plaintiff has not alleged one isolated incident of police misconduct. Cf. Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds by, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S 163, 164, 113 S. Ct. 1160, 1162, 122 L. Ed. 2d 517 (1993). He has alleged multiple incidents over a long, continuous time period. And, assuming Plaintiff's allegations as true, the fact that so much of this happened at headquarters, including in a public hallway, suggests that the officers involved did not fear supervisory personnel observing their conduct, intervening to stop them, or subjecting them to disciplinary action for their misdeeds. See, generally, Bangura v. County of Nassau, 07-CV-2966, 2009 WL 57135, at *1 (E.D.N.Y. Jan. 6, 2009) (allegations that corrections officers failed to "regularly patrol the tiers/areas to which they were assigned" suggested "inattention to or knowing acquiescence in misconduct by law enforcement personnel," thereby successfully pleading Monell claim). And this, in turn, suffices – at this stage – to create the plausible inference that Nassau County had an informal policy or custom of at least tolerating police misconduct. See, generally, Monell, 436 U.S. at 690 (constitutional deprivations can arise "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's

official decisionmaking channels"); O'Neil v. Bebee, 95-CV-1081, 2010 WL 502948, *6 (N.D.N.Y. 2010) (plaintiff may allege municipal liability "by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice"). Likewise, the alleged involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel, and the headquarters location, suffices to suggest that Nassau County poorly trained and/or supervised its officers concerning the need to not violate suspects' civil rights. See, generally, Morgan v. County of Nassau, 09-CV-4168, 2010 WL 2634125, *10 (E.D.N.Y. 2010) (allegations that officers on horseback acted with excessive force towards law abiding protestors sufficed to state a failure to train claim).

It follows then that Plaintiff's First and Second Causes of Action against Nassau County survive Defendants' motion to dismiss.

D. Plaintiff's Third Cause of Action

Construed liberally, Plaintiff's Third Cause of Action asserts a conspiracy claim under § 1985, and a failure to prevent a conspiracy claim under § 1986. Defendants argue that these claims fail. The Court agrees. It is well-settled that, under the intracorporate conspiracy doctrine, an entity cannot conspire with itself. See Quinn v. Nassau County Police Dep't,

13

53 F. Supp. 2d 347, 360 (E.D.N.Y. 1999). This doctrine applies to municipalities. Catcove Corp. v. Patrick Heaney, 685 F. Supp. 2d 328, 337 (E.D.N.Y. 2010). And here, all Defendants are part of, or work for, the same municipal entity – Nassau County. Moreover, there are no factual allegations suggesting that any Defendant was pursuing "personal interests wholly separate and apart" from Nassau County's. Quinn, 53 F. Supp. 2d at 360. So, under the intracorporate conspiracy doctrine, Plaintiff's § 1985 claim must be dismissed. And because "a § 1986 claim must be predicated on a valid § 1985 claim," Plaintiffs' § 1986 claim also fails. Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000) (internal citations and quotations omitted).

E.  Plaintiff's Fourth Cause of Action

Plaintiff also purports to assert an independent cause of action for attorneys' fees, under 42 U.S.C. § 1988. But § 1988 "only grants attorneys' fees to a prevailing party under [§ 1983], it does not create an independent cause of action." Carvel v. Franchise Stores Realty Corp., 08-CV-8938, 2009 WL 4333652, *9 (S.D.N.Y. 2009). Thus, Plaintiff's fourth cause of action is dismissed.

F.  Duplicative Nature of Complaint

Defendants argue that Plaintiff's claims against the named individuals in their official capacities should be dismissed. The Court agrees. See Morgan, 2010 WL 2634125, *5;

14

Castanza v. Town of Brookhaven, 06-CV-6654, 2010 WL 1049238, *2 (E.D.N.Y. 2010). Thus, the claims raised against the Individual Defendants in their official capacities are dismissed.

In addition, Plaintiff's Tenth Cause of Action alleges, in completely conclusory fashion, that Defendants violated his First, Fourth, and Fourteenth Amendment rights. But nothing in Plaintiff's Complaint suggests that Defendants infringed upon Plaintiff's First Amendment rights. And, to the extent that Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights, his First and Second Causes of Action encompass those allegations. Thus, the Court dismisses his Tenth Cause of Action, sua sponte.

G. Plaintiff's State Law Claims

Plaintiff's Fifth through Ninth Causes of Action assert five state law claims. Defendants seek dismissal, arguing that Plaintiff failed to comply with the prerequisites for suit found in New York's General Municipal Law. The Court agrees.

New York's General Municipal Law requires a plaintiff seeking to assert a state law tort action against a municipality to "(1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date the incident occurred." Snall v. The City of N.Y., 97-CV-5204, 1998 U.S.

Dist. LEXIS 21654, at *23-24 (E.D.N.Y. 1998) aff'd, 242 F.3d 367 (2d Cir. 2000); Beeks v. Reilly, 07-CV-3865, 2008 U.S. Dist. LEXIS 66539, at *27-28 (E.D.N.Y. 2008). Here, Plaintiff concedes that he did not file a valid notice of claim, and that the New York Supreme Court consequently dismissed his state court action. Thus, the Court must also dismiss his state law claims. See Keating v. Gaffney, 182 F. Supp. 2d 278, 294 (E.D.N.Y. 2001). That being said, Plaintiff contends that he is seeking to appeal the Supreme Court's decision to the New York Supreme Court, Appellate Division, Second Department. In the event that Plaintiff obtains a favorable decision from the Second Department, or the New York Court of Appeals, he may seek leave to reinstate his state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiff's Third through Tenth Causes of Action are dismissed in their entirety. Plaintiff's First and Second Causes of Action are dismissed against NCPD, Commissioner Mulvey, and the remaining Individual Defendants as to their official capacities.

Plaintiff's First and Second Causes of Action are not dismissed as to Nassau County, or as to the remaining Individual Defendants (Commissioner Mulvey excepted) in their individual capacities.

The Clerk of the Court is directed to update the docket sheet accordingly.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  11 , 2010
       Central Islip, New York